NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
GEORGE E. PENCE (Cal. Bar No. 257595)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2253
     Facsimile: (213) 894-2927
     E-mail:    george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>          v.<br><br>NEAL PATEL,<br>   aka "@INTERNETLORD,"<br>   aka "@DEFEAT,"<br><br>     Defendant. | No. CR 19-00017-CJC<br><br>PLEA AGREEMENT FOR DEFENDANT NEAL PATEL |
|---|---|

1.   This constitutes the plea agreement between NEAL PATEL ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

     a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one through

five of the indictment in <u>United States v. NEAL PATEL</u>, CR No. 19-00017-CJC, which charge defendant with conspiracy, in violation of 18 U.S.C. § 371; conveying false information concerning the use of an explosive device, in violation of 18 U.S.C. § 844(e); conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; and bank fraud, in violation of 18 U.S.C. § 1344.

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

      h.   Make restitution at or before the time of sentencing, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

      a.   Not contest facts agreed to in this agreement.

2

      b.    Abide by all agreements regarding sentencing contained in this agreement.

      c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

      d.    Recommend that defendant be sentenced to a three-year term of probation and 300 hours of community service to include, at the discretion of defendant's Probation Officer, an audio and video recorded presentation made by defendant at a school or comparable public forum about the deleterious consequences of engaging in swatting, i.e., making a false report to law enforcement or emergency services with the intent to cause a law enforcement response.

## NATURE OF THE OFFENSES

4.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: first, beginning on or about December 7, 2017, and ending on or about December 10, 2017, there was an agreement between two or more persons to commit at least one crime as charged in the indictment; second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and third, one of the members of the conspiracy performed at least one overt act on or after December 7, 2017 for the purpose of carrying out the conspiracy.

5.      Defendant understands that for defendant to be guilty of the crime charged in counts two and three, that is, conveying false information concerning the use of an explosive device, in violation of Title 18, United States Code, Section 844(e), the following must be true: Defendant (1) willfully; (2) made a threat or conveyed false information about an attempt; (3) by mail, telephone, telegraph, or other instrument of interstate or foreign commerce; (4) to kill, injure, or intimidate an individual or damage or destroy property; (5) by means of fire or an explosive.

6.      Defendant understands that for defendant to be guilty of the crime charged in count four, that is, conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349, the following must be true: first, beginning on or about November 27, 2017, and ending on or about December 5, 2017, there was an agreement between two or more persons to commit bank fraud in violation of Title 18, United States Code, Section 1344; and second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

7.      Defendant understands that for defendant to be guilty of the crime charged in count five, that is, bank fraud, in violation of Title 18, United States Code, Section 1344(2), the following must be true: first, the defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution – namely, Waukesha State Bank – by making false statements or promises; second, the defendant knew that the statements or promises were false; third, the statements or promises were material – that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; fourth, the

4

defendant acted with the intent to defraud; and fifth, Waukesha State Bank was federally insured.

## PENALTIES AND RESTITUTION

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: 5 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 844(e), is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a 3-year period of supervised release; a fine of not more than $1,000,000; and a mandatory special assessment of $100.

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344, is: 30 years' imprisonment; a 3-year period of supervised release; a fine of not more than $1,000,000; and a mandatory special assessment of $100.

12. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 85 years' imprisonment; a 3-year period of supervised release; a fine

of $2,750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $500.

13. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $33,708.12, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

14. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

15. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

16. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

17. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

No later than December 7, 2017, and continuing through on or about December 10, 2017, defendant agreed to, and did in fact, by a telephone and instrument of interstate and foreign commerce, willfully make a threat, and maliciously convey false information knowing the information to be false, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive. In furtherance of this conspiracy, defendant committed, and caused others to commit, the following overt acts:

On December 7, 2017, in Twitter direct messages, defendant asked Unindicted Co-Conspirator No. 1 to swat Victim R.S., and Unindicted Co-Conspirator No. 1 agreed. On that same date, in Twitter direct messages, defendant provided Unindicted Co-Conspirator No. 1 with what he believed to be personal identification information for Victim R.S., including Victim R.S.'s home address in Milford, Connecticut.

Later that day, Unindicted Co-Conspirator No. 1 called the Milford Police Department, identified himself as Victim R.S., and provided what he believed to be the home address of Victim R.S. Unindicted Co-Conspirator No. 1, posing as Victim R.S., also falsely reported that he had shot his parents, that he had tied up his siblings and intended to kill them, and that he planned to burn down his house.

On December 8, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 told defendant that he had swatted Victim R.S. Later that day, in Twitter direct messages, defendant provided Unindicted Co-Conspirator No. 1 with what he believed to be the address for a convention center in Dallas, Texas (the "Convention Center"), where a video game tournament was then occurring. Defendant then agreed to create, and did in fact create, an account with a voice-over-internet services provider for Unindicted Co-Conspirator No. 1 to use in making hoax phone calls to and concerning the Convention Center. Unindicted Co-Conspirator No. 1, posing as someone else, then called the Convention Center's administrative line and falsely reported that he left backpacks containing explosives in the Convention Center and that they were set to explode. Unindicted Co-Conspirator No. 1, again posing as someone

8

else, then called the Crime Stoppers tip line and maliciously and falsely reported that he left backpacks containing explosives in the Convention Center and that they were set to explode. Defendant provided Unindicted Co-Conspirator No. 1 with information about the evacuation of the Convention Center in response to Unindicted Co-Conspirator No. 1's false reports that he planted bombs there. At all relevant times, Unindicted Co-Conspirator No. 1 was located in the Central District of California and the aforementioned communications involved the use of an instrument of interstate and foreign commerce, namely the Internet.

Moreover, beginning no later than November 27, 2017, and continuing through December 5, 2017, defendant agreed to, and did in fact, commit bank fraud. In furtherance of this conspiracy, defendant committed, and caused others to commit, the following overt acts:

On or before November 27, 2017, defendant opened an account with a virtual private network service provider (the "VPN Service"). On December 1, 2017, defendant attempted to purchase a 1-month subscription to the VPN Service with a credit card number that he knew belonged to a real person and that he was not authorized to use.

On December 2, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 asked defendant to purchase a cap bearing a NASA logo (the "NASA cap") for Unindicted Co-Conspirator No. 1. On December 3, 2017, in Twitter Direct Messages, Unindicted Co-Conspirator No. 1 again asked defendant to purchase the NASA cap for him. Defendant agreed to make the purchase after obtaining credit and debit card account numbers belonging to others that he knew he was not authorized to use. Later that day, and again on December 4, 2017, in Twitter direct messages Unindicted Co-Conspirator No. 1 repeatedly insisted that defendant purchase the NASA cap for him and provided defendant with Unindicted Co-Conspirator No. 1's mailing address in Los Angeles.

On December 4, 2017, defendant obtained a debit card account number (the "Account Number"), which he knew belonged to Victim J.B., which was linked to her checking account at Waukesha State Bank, which at all relevant times was a member of and insured insured by the Federal Deposit Insurance Corporation. Later that day, defendant purchased the NASA cap from an online retailer, using the unauthorized Account Number. Defendant represented to the online retailer that he was authorized to use the Account Number to make the purchase when, in fact, he was not. Defendant provided the online retailer with Unindicted Co-Conspirator No. 1's name and address in Los Angeles for shipping purposes. Unindicted Co-Conspirator No. 1 then told defendant that he wanted him to purchase shoes for

9

him.  On December 4, 2017, Defendant purchased a 1-month subscription to the VPN Service, using the Account Number, knowing that he was not authorized to use that Account Number.

On December 5, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 told defendant that he had received the NASA cap and was thankful for it.

On December 6, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 told defendant that he wanted him to purchase shoes and a belt for him.  He then directed defendant to a website and asked him, "Can you card it[?]," which was coded language indicating his intent that defendant use an unauthorized credit or debit card account number to make the purchase.  Defendant responded, "yessir."

As a consequence of defendant's unlawful conduct, defendant owes restitution in the following amounts: $591.45 to the Milford Police Department; $37.98 to Victim J.B.; and $33,078.69 to Victim A.B.

## SENTENCING FACTORS

18.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime[s] of conviction.

19.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

```
Base Offense Level:          12      U.S.S.G. § 2A6.1(a)(1)
Substantial Disruption       +4      U.S.S.G. § 2A6.1(b)(4)
```

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

20. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

22. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

   f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

   g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

   h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

23. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than eighteen months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided

it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $33,708.12; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a sentence of no less than three years' probation, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $33,708.12.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the

14

Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 19 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

*/s/*                          7/22/19
GEORGE E. PENCE           Date
Assistant United States Attorney

*/s/*                          06/25/19
NEAL PATEL                 Date
Defendant

*/s/*                          6/28/19
STEPHEN DEMIK             Date
Attorney for Defendant NEAL PATEL

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or

16

representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____  06/25/19
NEAL PATEL                  Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am NEAL PATEL's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____      6/28/19
STEPHEN DEMIK                       Date
Attorney for Defendant NEAL PATEL